UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JEFFREY D. HINES, ET AL | CIVIL ACTION |
| VERSUS | NO. 06-562 |
| JAMES BRELAND, ET AL | SECTION "C" (5) |

ORDER AND REASONS

This matter comes before the Court on motion for partial summary judgment filed by Aubrey Jones, Sheriff of Washington Parish ("Sheriff Jones"), Warden Dennis Wheat ("Warden Wheat"), Scott Thompson ("Thompson"), Diane Miley ("Miley") and Sam Ashley ("Ashley").[1] Having considered the record, the memoranda of counsel and the law, the Court has determined that the motion should be denied for the following reasons.

The Caucasian plaintiffs, Jeffrey D. Hines ("Hines"), Paul Nuelle ("Nuelle") and Spike Gonzales ("Gonzales") filed this complaint alleging violations under the civil rights statute, 42 U.S.C. § 1983, federal and state constitutions, with pendent state claims under La. Civ. Code arts. 2315 and 2320 arising out of alleged beatings and

---

[1] Although the motion is brought by all five remaining defendants, the Court is unable to discern the role of Thompson from the Complaint or the motion. Given the nature of the issue raised in the motion, however, this lack of specificity is not critical.

1

mistreatment at the Washington Parish Prison ("WPP") in Franklinton, Louisiana. According to the complaint and the plaintiffs' depositions, the first beating involved Hines and four African American inmates on February 4, 2005; thereafter, all three plaintiffs were beaten by African American inmates during a riot on April 15, 2005. Hines further alleges that the Warden of the WPP, Dennis Wheat, struck him while he was handcuffed shortly after Hines returned from the hospital and home stay in August 2005, that guards Miley and Ashley did nothing to prevent the attack, and that Warden Wheat and others subjected him to other punishment after placing him in solitary confinement. (Rec. Doc. 1, 15-16). Hines also alleges that he was denied the medical attention he needed after Warden Wheat beat him and in November 2005, when Hines suffered from a staph infection that eventually necessitated surgery. (Rec. Doc. 1, 17-18). The claims include constitutional claims for excessive force and cruel and unusual punishment with regard to the August 2005 incident involving Warden Wheat and others, cruel and unusual punishment with regard to the February 2005 beating and the April 2005 riot. They also challenge Sheriff Jones's "policy of using inmates against one another as a form of punishment," which was maintained by other defendants, negligent failure to take all reasonable steps to maintain a relatively safe environment, battery, assault, intentional infliction of emotional distress and

unconstitutional refusal to provide medical treatment. Additional claims against Jones include inadequate training, supervision and discipline, along with maintaining unconstitutional policies and customs and vicarious liability for the torts of his deputies.[2]

In this motion, the five remaining defendants move for partial summary judgment "as it relates to plaintiffs' claims that defendants failed to protect them during their incarceration."[3] (Rec. Doc. 52, p.1). They claim that the undisputed facts indicate that no deliberate indifference exists, and that there is no evidence that prison officials unconstitutionally exposed plaintiffs to a substantial risk of serious harm. Their argument relies, in large part, on the plaintiffs' deposition testimony that indicates that prison officials had no reason to believe or suspect that plaintiffs would be involved in an altercation and that there was no "prior warning" to the defendants. (Rec. Doc. 52,p. 4). The defendants argue that, based on this deposition testimony, "prison officials could not have foreseen, without receiving a report of problems on the Cell Block, that the plaintiffs were in danger ..." and "could not have known or suspected" that the

---

[2] No claim identified as against Scott Thompson has been included in the complaint, although the complaint does include claims against "defendant individuals."

[3] The defendants do not raise the issue of qualified immunity in the motion, and the Court does not consider the issue properly before it by virtue of its mention in defendants' reply brief.

plaintiffs would be involved in the violence of February and April 2005.  (Rec. Doc. 52, p. 10).

The plaintiffs oppose the motion with the argument that both Sheriff Jones and Warden Wheat have demonstrated a lack of knowledge of prison policy, procedure, training and medical care that would ensure the safety of the inmates.  Singled out in the opposition is the absence of a classification system which segregates non-violent inmates from violent ones.  The plaintiffs argue that the defendants' argument is "short-sighted" and ignores the custom of violence in the prison along with evidence of jailers' involvement in violence.  (Rec. Doc. 57, p. 2).

The parties agree that the applicable standard governing the prison officials' failure to prevent harm by other inmates is set forth in <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994): the plaintiffs must show "they were incarcerated under conditions posing a substantial risk of serious harm," and that the defendants acted with "deliberate indifference" to inmate health or safety.  "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  <u>Id.</u>, 511 U.S. at 848.  "Deliberate indifference" lies between negligence and purpose or knowledge, and is equated with

4

recklessness: "[i]t is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner that is the equivalent of recklessly disregarding that risk." Id., 511 U.S. at 836. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id., 511 U.S. at 837.

   The disregard must be "conscious." Id., 511 U.S. at 839. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious," although the inference may not be conclusive Id., 511 U.S. at 842. "While the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him, ... he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist ..." Id., 511 U.S. at 843. "Nor may a prison official escape liability for deliberate indifference

by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was likely to be assaulted by the specific prisoner who eventually committed the assault." Id. "That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so.  Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they know the underlying facts believed, (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id., 511 U.S. at 844.

In many ways, the defendants' argument mirrors the one rejected by the United States Supreme Court in Farmer insofar as it focuses on the plaintiffs' deposition testimony as the source of knowledge by the prison officials because "[Petitioner] never expressed any concern for his safety to any of the [respondents].  Since [respondents had no knowledge of any potential danger to [petitioner], they were not deliberately indifferent to his safety." Id., 511 U.S. at 848.  "Plaintiffs' own testimony confirms that prison officials had no reason to believe or even suspect that the plaintiffs would be involved in an altercation.  There was no prior warning to defendants." (Rec. Doc. 52, p. 4).  The Court's reading of the plaintiffs' deposition testimony, along with the

deposition testimony of Sheriff Jones and Warden Wheat, reveals sufficient evidence that prison officials were aware of a serious threat to the inmates' safety and failed to take reasonable steps to prevent it for purposes of summary judgment. Hines alleged he was seriously beaten in February 2005, prior to the alleged riot in April 2005, and yet Sheriff Jones is alleged to be indifferent to that incident and remained uninvolved. The plaintiffs testified that Warden Wheat participated in an assault and that the prison guards condoned violence and promoted racial tensions. These are disputed issues of fact.

The Court construes that plaintiffs' proposed evidence that the prison officials failed to classify inmates according to their propensity toward violence as supporting the seriousness of risk and the deliberateness of indifference, and not necessarily underlying a separate claim for failure to classify. The seriousness of the risk is objectively measured and, although the prison officials' subjective culpability may be the measure of the indifference, the <u>Farmer</u> court advises that the officials' own testimony is not the only source of evidence on that issue.

Accordingly,

IT IS ORDERED that the motion for partial summary judgment filed by Aubrey Jones, Sheriff of Washington Parish, Warden Dennis Wheat, Scott Thompson, Diane

Miley and Sam Ashley is DENIED. (Rec. Doc. 52).

THE PARTIES ARE URGED TO PURSUE AMICABLE RESOLUTION OF THIS MATTER.

New Orleans, Louisiana, this 14th day of November, 2007.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE